```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF TEXAS
 2                          HOUSTON DIVISION

 3
     MICHELE G. TAYLOR            )
 4                                )
             Plaintiff,           )    NO. H-13-CV-2708
 5                                )
     v.                           )    March 24, 2015
 6                                )
     TEXAS SOUTHERN UNIVERSITY,   )
 7                                )
             Defendant.           )
 8

 9
                              TRIAL
10            BEFORE THE HONORABLE EWING WERLEIN, JR.
                           AND A JURY
11
                             VOLUME 2
12                       PAGES 237 - 478

13

14    For the Plaintiff:        LaShawn A. Williams
                                The L.A. Williams Law Firm
15                              1776 Yorktown, Suite 600
                                Houston, TX  77056
16
                                Darrell J. O'Neal
17                              Law Office of Darrell J. O'Neal
                                2129 Winchester Road
18                              Memphis, TN  38116

19    For the Defendant:        Drew L. Harris
                                Melissa R. Holman
20                              Office of the Attorney General
                                300 West 15th Street, 11th Floor
21                              Austin, TX  78701

22    Court Reporter:           Bruce Slavin, RPR, CMR

23

24
     Proceedings reported by mechanical stenography and produced
25   by computer-aided transcription.
```

**EXHIBIT A**

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | right here.                                                          |
|       | 2  | Good morning, Dr. Taylor.                                            |
|       | 3  | A.  Good morning.                                                    |
|       | 4  | Q.  You can see the exhibits well enough on the screen in            |
| 10:01 | 5  | front of you?                                                        |
|       | 6  | A.  No.  Could you enlarge it, please.                               |
|       | 7  | Q.  How's that?                                                      |
|       | 8  | A.  That's better.  Wonderful.                                       |
|       | 9  | Q.  All right.  I want to just start by clarifying exactly           |
| 10:01 | 10 | what your claims are in this lawsuit.                                |
|       | 11 | You are suing your employer for gender                               |
|       | 12 | discrimination because you're not paid as much as Shibu              |
|       | 13 | Mathews.  Is that correct?                                           |
|       | 14 | A.  Yes.                                                             |
| 10:02 | 15 | Q.  And you know that his title is Assistant Dean for                |
|       | 16 | Administrative Services.  You heard that in the trial                |
|       | 17 | earlier.  Correct?                                                   |
|       | 18 | A.  Yes.                                                             |
|       | 19 | Q.  Now, you're not claiming that you should make as much as         |
| 10:02 | 20 | him simply because you and he have "assistant dean" in your          |
|       | 21 | titles?                                                              |
|       | 22 | A.  Yes.                                                             |
|       | 23 | Q.  So, the reason why you should make as much as Shibu              |
|       | 24 | Mathews does is because you both happen to have "assistant           |
| 10:02 | 25 | dean" in your title?                                                 |

|  |  |  |
|---|---|---|
|  | 1 | A. Yes. |
|  | 2 | Q. So, it doesn't matter if there are different job duties. |
|  | 3 | Right? |
|  | 4 | A. No. |
| 10:02 | 5 | Q. And it doesn't matter if they have different schools? |
|  | 6 | A. No. |
|  | 7 | Q. And it doesn't matter if you have different background |
|  | 8 | experiences. Correct? |
|  | 9 | A. No. |
| 10:02 | 10 | Q. And it doesn't matter if you have different |
|  | 11 | performances. Correct? |
|  | 12 | A. No. |
|  | 13 | Q. You both have "assistant dean" in your title; so, |
|  | 14 | therefore, you should make the same amount. Correct? |
| 10:02 | 15 | A. Yes. |
|  | 16 | Q. Now, you're familiar that there are other female |
|  | 17 | assistant deans. Correct? |
|  | 18 | A. Yes. |
|  | 19 | Q. And, in fact, those female assistant deans make more |
| 10:03 | 20 | money than you do as well. Correct? |
|  | 21 | A. Yes. |
|  | 22 | Q. But, by your same logic, they should make as much as |
|  | 23 | you. Correct? |
|  | 24 | A. Yes. |
| 10:03 | 25 | Q. And, for example, there's Prudence Smith, who is the |

|  |  |
|---|---|
| 1 | Assistant Dean for External Affairs in the law school. |
| 2 | She should make as much as you.  Correct? |
| 3 | A.  Yes. |
| 4 | Q.  But she actually makes, I think, $85,000.  Correct? |
| 10:03  5 | A.  Yes. |
| 6 | Q.  And I think you make approximately $71,000.  Correct? |
| 7 | A.  Yes. |
| 8 | Q.  So, under your logic, because you both have "assistant |
| 9 | dean" in your title, even though you're in different schools |
| 10:03  10 | and do different jobs, you should make the same amount? |
| 11 | A.  Correct. |
| 12 | Q.  And that's what you're telling the jury here today? |
| 13 | A.  Yes. |
| 14 | Q.  And, so, the reason why Prudence Smith in the law school |
| 10:03  15 | is getting paid $14,000 more than you do, it can't be |
| 16 | gender discrimination, can it? |
| 17 | A.  Yes. |
| 18 | Q.  Oh.  It is gender discrimination. |
| 19 | Prudence Smith is a woman.  Right? |
| 10:04  20 | A.  She's a woman. |
| 21 | Q.  So, you're claiming -- |
| 22 | MS. WILLIAMS:  I'm going to object, Your Honor.  My |
| 23 | objection is facts not into evidence, lack of foundation. |
| 24 | THE COURT:  Overruled.  This is cross-examination. |
| 10:04  25 | MR. HARRIS:  All right. |

```
           1   By Mr. Harris:
           2   Q.  So, you're aware that Prudence Smith is a female.
           3   Correct?
           4   A.  Yes.
10:04      5   Q.  But the fact that she gets paid more than you is
           6   evidence of gender discrimination.  Correct?
           7   A.  Is, yes, to me.  Yes.
           8   Q.  And, so, in your view, it's illegal to pay another woman
           9   more than you because that would be gender discrimination?
10:04     10   A.  No.
          11           MS. WILLIAMS:  Objection, Your Honor, in terms of
          12   legal conclusion.  She's not an attorney.  She doesn't know
          13   the law.
          14           MR. HARRIS:  I'm just trying to understand what her
10:04     15   claims are.
          16           THE COURT:  I'll overrule the objection.
          17           MR. HARRIS:  All right.
          18   By Mr. Harris:
          19   Q.  So, we're here today because you believe that because
10:04     20   you have "assistant dean" in your title you should make as
          21   much as any other assistant dean at any of the schools at
          22   TSU?
          23   A.  Yes.
          24   Q.  Okay.  And just to clarify:  There's another female
10:05     25   assistant dean in the law school named Shavonne Henderson.
```

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | She's the Assistant Dean for Career Services at the law              |
|       | 2  | school.                                                              |
|       | 3  | You don't do Career Services.  Correct?                              |
|       | 4  | MS. WILLIAMS:  Objection again.  Facts not into                      |
| 10:05 | 5  | evidence, improper foundation.                                       |
|       | 6  | THE COURT:  Overruled.                                               |
|       | 7  | By Mr. Harris:                                                       |
|       | 8  | Q.  You remember hearing Mr. Dickens, the HR manager, talk           |
|       | 9  | about how there was someone named Shavonne Henderson who's           |
| 10:05 | 10 | assistant dean of Career Services at the law school.                 |
|       | 11 | Correct?                                                             |
|       | 12 | A.  I heard her name.                                                |
|       | 13 | Q.  And I think you may have heard that -- that she -- the           |
|       | 14 | testimony that she makes more money than you do.                     |
| 10:05 | 15 | A.  Yes.                                                             |
|       | 16 | Q.  And, again, I'm just trying to understand.                       |
|       | 17 | So, the fact that Shavonne Henderson, another                        |
|       | 18 | woman in a different school, makes more money than you as an         |
|       | 19 | assistant dean, that's evidence of gender discrimination?            |
| 10:05 | 20 | A.  Yes.                                                             |
|       | 21 | Q.  Now, you're not contending you do the same thing as              |
|       | 22 | Shavonne Henderson, the Assistant Dean for Career Services.          |
|       | 23 | Correct?                                                             |
|       | 24 | A.  Could you say that again.                                        |
| 10:06 | 25 | Q.  You're not contending you do the same thing as Shavonne          |

```
           1    Henderson, who's the Assistant Dean for Career Services.
           2    Correct?
           3    A.  No.
           4    Q.  All right.  Because you don't do Career Services stuff
10:06      5    for law students.  Correct?
           6    A.  No.
           7    Q.  You don't help place law students into law firms or
           8    working for judges?
           9    A.  No.
10:06     10    Q.  So, you would agree that you don't have the same job
          11    duties as Shavonne Henderson.  Correct?
          12    A.  Yes.
          13    Q.  But you believe that you should be paid equal to
          14    Shavonne Henderson because she is an assistant dean.
10:06     15    Correct?
          16    A.  Yes.
          17    Q.  But you would agree that your job description and
          18    Shavonne Henderson's job description are not the same?
          19    A.  I wouldn't know that.
10:06     20    Q.  You wouldn't know that.  True.
          21            But you do know that she does Career Services
          22    stuff and you -- I think you just testified you don't do
          23    Career Services stuff.
          24    A.  No, I don't.  I don't know what she does.
10:07     25    Q.  All right.  So, I think -- Would it be safe to assume
```

```
10:07

10:07

10:07

10:08

10:08
```

1  that your job descriptions are probably not identical?
2  A.  Probably not.
3  Q.  Okay.  There may be some overlap because you're both
4  assistant deans, but, for the most part, the job duties are
5  not identical.  Correct?
6  A.  I don't know.
7  Q.  Well, let's talk about Shibu Mathews.
8           Your claim, again, is that you should be paid
9  the same as Shibu Mathews, the Assistant Dean for
10 Administrative Services at the law school.  Correct?
11 A.  Yes.
12 Q.  Now, do you know what -- all the job duties Shibu
13 Mathews has?
14 A.  Not all of them.  I know what he has has presented.
15          THE COURT REPORTER:  I can't hear you, ma'am.
16          THE WITNESS:  "No."
17 Q.  Okay.  So --
18 A.  Uh --
19 Q.  Sorry.  I didn't mean to interrupt.  I apologize.
20 Please continue.
21 A.  Oh.  He asked me what I said.  "No."
22 Q.  All right.  So, you don't know exactly what Shibu
23 Mathews' job duties are?
24 A.  Only what you have presented to me.
25 Q.  Well, I'm going to -- Remember how we had a -- during

|  |  |
|---|---|
|  | 1   the opening session, we had these slides, and I think I had |
|  | 2   this little depiction there. |
|  | 3           If it were the case that your job duties and |
|  | 4   Shibu Matthews' job duties perhaps only overlapped a little |
| 10:08 | 5   bit but they were different, do you still contend you should |
|  | 6   make the same amount as Shibu Mathews? |
|  | 7           MS. WILLIAMS:  Objection, Your Honor.  Speculation. |
|  | 8           THE COURT:  Overruled. |
|  | 9   A.  Yes, I do. |
| 10:08 | 10  By Mr. Harris: |
|  | 11  Q.  Okay.  Even if the job duties are different? |
|  | 12  A.  They are -- They're probably -- That is a depiction. |
|  | 13  They're probably not.  The overall inclusion of the |
|  | 14  similar -- same duties. |
| 10:09 | 15  Q.  Okay.  But, even if they were different, you're telling |
|  | 16  the jury that you should still be paid as much as him |
|  | 17  because you're both assistant deans.  Correct? |
|  | 18  A.  Yes. |
|  | 19  Q.  All right.  Let's talk a little bit about your side of |
| 10:09 | 20  this Venn diagram. |
|  | 21           You're familiar with the term "Venn diagram". |
|  | 22  Right? |
|  | 23  A.  Now I am.  I know the diagrams will interact. |
|  | 24  Q.  Yeah.  Venn diagrams are, you know, things that show |
| 10:09 | 25  where things are somewhat similar or where they're |

```
                1       Now, please stand by.  Help Ms. Flores
                2  assemble the exhibits, if you haven't already done that,
                3  that need to go to the jury room and then follow her
                4  instructions, please, on where you should be made -- where
     11:46     5  you should be -- your whereabouts should be in order to be
                6  available if we need you for a question or a verdict.
                7       All right.  Thank you, both.  Court will be in
                8  recess.
                9       MS. WILLIAMS:  Thank you, Your Honor.
     11:47    10       MR. HARRIS:  Thank you, Your Honor.
               11                    (Recess)
               12                    (Jury present)
               13       THE COURT:  Please be seated.
               14       I understand that the jury has reached a
     13:41    15  verdict.  Is that correct?
               16       JURY FOREPERSON:  Yes, Your Honor.
               17       THE COURT:  All right.  If you'll hand it to the
               18  deputy.  Thank you.
               19       Is the verdict unanimous?
     13:42    20       JURY FOREPERSON:  Yes, Your Honor.
               21       THE COURT:  All right.  Thank you.
               22       I will now ask the clerk of court then to read
               23  the verdict from the jury.
               24       CASE MANAGER:  As to Interrogatory No. 1, the jury
     13:43    25  answered "No."
```

```
                    1                    As to Interrogatory No. 2, the jury answered
                    2    "Yes."
                    3                    As to Interrogatory No. 3, the jury answered
                    4    "No."
            13:43   5                    "The jury finds in this case unanimously as
                    6    indicated in the answers to the foregoing interrogatories."
                    7              THE COURT:  Signed.
                    8              CASE MANAGER:  "Signed at Houston, Texas, on this
                    9    26th day of March, 2015, by the foreperson of the jury."
            13:43  10              THE COURT:  All right.  Thank you.
                   11                    Does anyone wish to have the jury polled?
                   12              MR. HARRIS:  No, Your Honor.
                   13              MS. WILLIAMS:  Your Honor, we would.  We would like
                   14    to have --
            13:43  15              THE COURT:  You would.  All right.
                   16                    Ladies and gentlemen, what this means is I'm
                   17    going to ask each one of you whether the verdict that has
                   18    been read is your verdict.  When I call your name, if you
                   19    would, please stand and indicate whether this is your
            13:44  20    verdict.
                   21                    We'll start with the foreperson.  I believe it
                   22    was Ms.
                   23                                , is this your verdict, ma'am?
                   24              JUROR:  Yes, Your Honor.
            13:44  25              THE COURT:  Thank you.
```

```
 1                    Mr.       , is this your verdict, sir?
 2              JUROR:  Yes, Your Honor.
 3              THE COURT:  Miss      , is this your verdict,
 4    ma'am?
 5              JUROR:  Yes, Your Honor.
 6              THE COURT:  Mr.    , is this your verdict, sir?
 7              JUROR:  Yes, Your Honor.
 8              THE COURT:  Miss      , is this your verdict,
 9    ma'am?
10              JUROR:  Yes, Your Honor.
11              THE COURT:  Mr.       , is this your verdict,
12    sir?
13              JUROR:  Yes, Your Honor.
14              THE COURT:  Mr.        , is this your verdict,
15    sir?
16              JUROR:  Yes, sir.
17              THE COURT:  Miss      , is this your verdict,
18    ma'am?
19              JUROR:  Yes, sir, it is.
20              THE COURT:  Mr.        , is this your verdict,
21    sir?
22              JUROR:  Yes, sir.
23              THE COURT:  Mr.     , is this your verdict, sir?
24              JUROR:  Yes, sir.
25              THE COURT:  Mr.           , is this your verdict,
```

```
           1   sir?
           2            JUROR:  Yes, Your Honor.
           3            THE COURT:  Mr.        , is this your verdict, sir?
           4            JUROR:  Yes, Your Honor.
13:45      5            THE COURT:  All right.  Thank you.
           6                 I apologize if I mispronounced a name at any
           7   point.
           8                 I do find that the verdict is unanimous, it is
           9   in order, and I order it accepted and filed.
13:45     10                 Now, ladies and gentlemen, you have concluded
          11   your service in this proceeding.  So, you're going to be
          12   released momentarily from all the instructions I've given.
          13                 You can go back and read newspapers.  You can
          14   tell your family, your friends, your business associates,
13:45     15   whoever -- If they're interested in knowing what you've been
          16   doing this week, you'll be able to talk about it.
          17                 Sometimes lawyers like to ask jurors about the
          18   case.  It'd be entirely up to you if you want to talk to
          19   them or not.  I don't know that any of them will approach
13:46     20   you.
          21                 If they do, if you want to talk, that's fine.
          22   If you don't, say, "I don't want to talk about it" and they
          23   will respect that.  These are professionals.
          24                 So, with that, I might add, also, that I'll be
13:46     25   glad to come down to the jury room in a few minutes.
```

|  |  |
|---|---|
| 1 | Sometimes jurors have some questions they want to ask me |
| 2 | about the process or about the courts. |
| 3 | I'll be glad to come down there in just a few |
| 4 | minutes after court recesses, but nobody is going to be -- |
| 13:46  5 | You don't need to wait on that. |
| 6 | Ms. Flores will have jury service forms for |
| 7 | you, those of you who need them for your employers, and will |
| 8 | be able to provide those to you and you'll be free to go. |
| 9 | So, finally, one more word of thanks and |
| 13:46  10 | appreciation for your service here to your country and to |
| 11 | the judicial system. |
| 12 | As I told you on the first day of trial, this |
| 13 | is the way things have been going on now for hundreds of |
| 14 | years and in this country -- You know, here we are in our |
| 13:47  15 | third century of freedom in this nation and still the jury |
| 16 | system works to solve disputes that come along in our |
| 17 | society. |
| 18 | So, you've been an important part and made a |
| 19 | valuable contribution in being part of this system of the |
| 13:47  20 | American government.  Thank you for your service. |
| 21 | The jury is now discharged. |
| 22 | (Jury dismissed) |
| 23 | THE COURT:  You may be seated. |
| 24 | I think, ladies and gentlemen, that -- based |
| 13:47  25 | upon this verdict, I think nothing else is left outstanding |

1  and I would expect -- I would proceed to enter a judgment --
2  a take-nothing judgment for the Defendant in this case.
3           Is there any reason that such a judgment
4  should not be entered based on the verdict?
5           MS. WILLIAMS: No, Your Honor.
6           MR. HARRIS: No, Your Honor.
7           THE COURT: All right. Fine.
8           Well, I'll do that, then.
9           Thank you for your service. Counsel for both
10 sides have worked very hard, I recognize, and have done a
11 very fine job in assisting your clients.
12          And, as you know, too, this is the way the
13 system works to resolve the disputes in an agreeable
14 fashion, through the jury system.
15          So, thank you all. That concludes this case.
16          Court will be in recess.
17                 COURT REPORTER'S CERTIFICATE
18      I, BRUCE SLAVIN, certify that the foregoing is a
19 correct transcript from the record of proceedings in the
20 above-entitled matter, to the best of my ability.
21
22                              *s/Bruce Slavin*
23                              BRUCE SLAVIN, RPR, CM
24
25