United States District Court
Southern District of Texas

**ENTERED**

June 29, 2020

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MICHELE TAYLOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-01225 |
| | § | |
| TEXAS SOUTHERN UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Michele Taylor brings her third suit against Texas Southern University, her long-time employer, despite the fact that she has sued TSU twice before without success and is asserting a similar set of claims yet again.  In this suit, Taylor alleges that TSU is paying a similarly situated male employee, Naveed Haider, $924.12 more per year, even though Haider has less education and a shorter tenure at TSU than Taylor.  (Docket Entry No. 23 at ¶¶ 3.19–3.20).

After Taylor filed her initial complaint, TSU filed a motion to dismiss, arguing that Taylor had not alleged sufficient facts to state a claim that Haider was a suitable comparator and that the suit was barred by claim preclusion.  (Docket Entry No. 12).  The court granted the motion to dismiss, with leave to amend, holding that Taylor had failed to plead sufficient facts to state an Equal Pay Act claim.  (Docket Entry No. 22).  Taylor amended her complaint and TSU's motion for summary judgment followed.  (Docket Entry Nos. 23, 25).

In the motion, TSU argues that Taylor cannot establish a *prima facie* Equal Pay Act claim because Taylor and Haider do not perform substantially similar job duties, and even if she could, Taylor's poor work performance is a valid sex-neutral reason for the pay disparity.  (Docket Entry No. 25).  Taylor failed to respond to the motion for summary judgment for almost three months.

When she did, Taylor disputed the facts TSU set out, contending that she performs many of the same duties that TSU claimed Haider performed.  (Docket Entry No. 26).  TSU replied, noting that Taylor's response was untimely and arguing that her declaration was not enough to preclude summary judgment.  (Docket Entry No. 27).

Based on a careful review of the pleadings, the motion, reply, response, the evidence, and the applicable law, TSU's motion for summary judgment is denied.  On the present record, Taylor has shown factual disputes material to determining whether she and Haider are valid comparators and as to whether the proffered legitimate, nondiscriminatory reason for the wage disparity between Haider and Taylor was pretextual.

The reasons for this ruling are set out below.

## I.      Background

### A.      Factual Background

Taylor has been an employee of Texas Southern University since 1972.  (Docket Entry No. 23 at ¶ 3.1).  She has a Doctorate of Education and has been the Assistant Dean for Graduate Programs for the last 19 years.  (*Id.* at ¶¶ 3.1–3.2).  Before becoming Assistant Dean, Taylor was an Administrative Assistant in the Graduate School.  (Docket Entry No. 25-1 at 11, ¶ 3).  Taylor reports to the Provost, but her immediate supervisor is Dean Gregory Maddox, the Dean of the TSU Graduate School.  (Docket Entry No. 23 at ¶ 3.11; Docket Entry No. 25-1 at 11, ¶ 3).  Maddox is responsible for assigning Taylor's duties.  (Docket Entry No. 25-1 at 11, ¶ 3).

TSU submitted Taylor's written job description; it was written in 2007 and apparently not updated since.  (*See* Docket Entry No. 25-1 at 2–4).  Taylor last received a written description of her duties as "Assistant Dean, Graduate Programs" in September 2007.  (Docket Entry No. 25-1 at 11, ¶ 4; *see also* Docket Entry No. 25-1 at 2–4).  The 2007 job description summarized the key

duties of the role as "managing the Graduate School office, and coordinating activities associated with admissions, enrollment, advisement, retention, and graduation in accordance with established policies and procedures." (Docket Entry No. 25-1 at 2). The job description listed the duties as including "manag[ing] the daily operations of the graduate school office"; "coordinating student services including processing and approvals of student applications"; "maintain[ing] the Banner admissions database"; assisting the Dean with Committee assignments and communications; "coordinat[ing] purchasing and procurement"; preparing reports related to admissions, registration and graduation; planning presentations and programs for school functions, such as orientation; and managing the thesis review process. (*Id.* at 2–3).

According to TSU, this description is outdated because other individuals in the Graduate School office now handle many of the listed functions. (Docket Entry No. 25 at 6). TSU submitted a declaration from her supervisor, Maddox. (Docket Entry No. 25-1 at 11–13). Maddox noted in his declaration that Taylor no longer handles admissions applications or purchasing and procurement. (*Id.* at 11, ¶ 4). He stated that Leddie Smith now handles admissions duties and the Graduate School's budget officer, Carol Mitchell, deals with purchasing and procurement. (*Id.*).

TSU's characterization of Taylor's duties is derived primarily from Maddox's declaration. (*Id.* at 11–13). According to Maddox, Taylor's duties primarily involve processing theses and dissertations, as well as "interacting with students regarding matriculation and graduation requirements." (*Id.* at 12, ¶ 6). Taylor does not register students for classes, but she does answer student questions about matriculation and graduation requirements. (*Id.*). According to Maddox, Taylor's role does not involve travel or include recruitment, admissions, or course or curriculum design. (*Id.*).

Taylor provided a declaration detailing her job responsibilities.  (Docket Entry No. 26-6).  Taylor agrees that her duties include processing theses and dissertations and "interacting with students regarding matriculation and graduation requirements," but she argues that she has additional duties.  (Docket Entry No. 26-6 at ¶¶ 23, 27, 30).  Taylor asserts that she "oversee[s] graduate programs and act[s] as point of contact for graduate programs" and "perform[s] academic advising tasks and policies and procedures for graduate students and the matriculation process."  (Docket Entry No. 26-6 at ¶ 14).  She asserts that she performs all but six of the duties in Haider's 2015 draft job description.  (*Id.*).  The duties that she claims as hers are:

- "[r]esearch[ing] market trends and opportunities, and analyz[ing] data directly related to managing the incoming class profile";

- "[m]aintain[ing] knowledge of degree programs from competitive institutions of higher education";

- "[r]eview[ing] applicant files . . . and recommend[ing] admission decisions";

- "[c]oordinat[ing] and participat[ing] in initiatives designed to ensure competitive levels of diversity";

- "[s]erv[ing] as an academic advisor to ensure that the students are taking courses in the proper sequence.  Prepar[ing] degree plans for new students and ensur[ing] student compliance with prerequisite requirements";

- "[r]esearch[ing] current marketing and recruiting technologies used within the industry";

- "[a]ssist[ing] in the development and management of the communications strategy, including responsibility for timely and effective distribution of physical and digital communication material";

- "[d]evelop[ing] and deliver[ing] presentations for live and virtual information sessions"; and

- "[o]ther duties and responsibilities as assigned."

(*Id.*).

Taylor asserts that she performs additional duties, including:

4

- managing "purchasing and procurement for daily office operations";

- advising students and performing related services, including: "[a]dvis[ing] students all along the way of their time in graduate school," "performing Registrar work and work[ing] with the Registrar's office regularly," "[c]lear[ing] students for graduation, including Mr. Haider's students," "[w]ork[ing] in the BANNER system," and participating in the academic probation process by "inform[ing] the student what is missing, what needs to be done to meet requirements and if the GPA is below the minimum," as well as unblocking students who are on academic probation in the system;

- traveling, including one trip to China in 2018 to accompany a professor to recruit lecturers for TSU and other travel related to "Board work representing TSU to these boards such as the National Association of African American Studies and [as] a Facilitator for the American Association of University Women";

- "recruit[ing] students at any event [she] is at and always carry[ing] TSU information";

- "communicat[ing] with potential applicants" and "provid[ing] them with information both

- written and verbal in [her] sessions";

- "conduct[ing] face to face information and orientation for incoming students";

- "acquir[ing] information and prepar[ing] preliminary and final reports that contain all the accrediting information for graduation about all graduate students and the graduate business program";

- "select[ing] students who work directly with [Taylor] for graduate scholarships and graduate school assistantship positions"; and

- reviewing business degree plans for accuracy and final sign off.

(Docket Entry No. 26-6 at ¶¶ 22–36).

TSU documented a number of issues with Taylor's job performance as Assistant Dean. In 2007, Maddox reprimanded Taylor in writing on multiple occasions for "failing to process theses and dissertations in a timely manner, and creating a backlog," as well as for poor customer service with students. (Docket Entry No. 25-1 at 12, ¶ 7). Maddox reprimanded Taylor in writing in May 2011 for "her handling of student complaints, as well as her role in leaving two graduate students off of the University's graduation program." (*Id.*). In 2015, Maddox removed duties from Taylor

after she "failed to make progress on setting up a system for online submission of theses and dissertations." (*Id.* at 12, ¶ 5). This duty had to be reassigned to Dr. Mahesh Vanjani, who made the change to the online submission system in one semester. (*Id.*). But it is also undisputed that Taylor has not received any "disciplinary action, warnings or coaching since 2015." (Docket Entry No. 26-6 at ¶ 38).

Taylor's performance is evaluated as part of TSU's yearly performance reviews. During these reviews, employees are ranked on a 1–5 scale, with a score of "3" meaning satisfactory and "2" meaning marginal. (Docket Entry No. 25-1 at 12, ¶ 8). Taylor received scores of 2.71 in 2011, 3.50 in 2012, 2.50 in 2013, 2.25 in 2015, 2.58 in 2016 and 2.83 in 2017.[1] (*Id.*).

Maddox described frequent student complaints about Taylor, supporting his claim that Taylor was the "only employee of the Graduate School about whom [Maddox] receive[s] significant student complaints." (*Id.* at 12, ¶ 9). According to Maddox, performance evaluation scores and complaints "would be taken into consideration when deciding on merit raises, and would thus affect pay." (*Id.*).

Naveed Haider began working at TSU as an Academic Advisor after earning his MBA from TSU in 2004. (Docket Entry No. 25-1 at 14, ¶ 3; *see also* Docket Entry No. 23-1 at 1). Haider was the Program Manager for the School of Business until TSU recharacterized his job and duties to an Assistant Dean. (Docket Entry No. 25-1 at 14, ¶ 3). Haider received a salary increase after his title was changed to Assistant Dean for Graduate Business Programs. (Docket Entry No. 25-1 at 14, ¶ 3). Haider received additional duties and another title change in 2019. (*Id.* at 14, ¶ 4). Haider is now the "Assistant Dean for Graduate Programs, Innovative & Curricula Design and

---

[1] Taylor did not receive a performance evaluation score in 2014 because the review occurred during her first suit against TSU. (*Id.*); *see Taylor v. TSU ("Taylor I")*, No. H-13-2708, 2014 WL 12586752 (S.D. Tex. Dec. 23, 2014).

Special Projects" for the Jesse H. Jones School of Business at TSU. (*Id.* at 14, ¶ 1). Haider's immediate supervisor is Dean David Yen of the School of Business. (*Id.*). He ultimately reports to the Provost. (Docket Entry No. 23 at ¶ 3.11).

As an Assistant Dean, Haider oversees TSU's MBA, Executive MBA, Master of Science in Management Information Systems, and Online Executive Education programs. (Docket Entry No. 25-1 at 14, ¶ 2). According to the written job description for Haider's position, his key duties included "lead[ing] recruitment activities, review[ing] and approv[ing] applications for admission, and advis[ing] students on degree plans and curriculum." (Docket Entry No. 25-1 at 8–10). TSU submitted a draft job description that has not been updated since 2015, but according to Haider, it still reflects his general duties. (Docket Entry No. 25-1 at 14–15, ¶ 5).

In addition to the duties listed in the job description, Haider is responsible for several other functions within the School of Business. (*Id.* at 15, ¶ 6). These duties include:

- "[b]eing responsible for recruiting graduate students, which means regular traveling in the spring and fall across the state to attend graduate school fairs in different cities;

- [c]ommunicating with potential applicants, conducting information sessions;

- [p]lanning and conducting face-to-face and online orientation for the incoming students;

- [s]erving as the graduation marshal for the School of Business during spring and fall semesters;

- [p]roviding accreditation information to accreditors;

- [u]pdating the catalog of business school classes, planning what courses are needed for the future, and making recommendations as to curriculum changes;

- [s]erving as an academic advisor and registering students for courses in the BANNER system;

- [s]erving as the primary contact person for Executive MBA students for any specific needs, such as financial aid and student accounting issues;

- [m]anaging the four cohorts of the Online Executive MBA program, collecting the eText information from faculty, and purchasing books from different vendors;

- [s]electing students for the Jesse H. Jones School of Business graduate scholarships and graduate school assistantships positions; and

- [c]reating degree plans for the graduate business programs."

(*Id.*).

Haider's other job duties include making admissions decisions and planning and attending a yearly international program for Executive MBA students. (*Id.* at 15–16, ¶¶ 7–8). As an academic advisor, Haider regularly counsels students each semester, registers students for classes, and "provide[s] academic intervention for students on academic probation." (*Id.* at 16, ¶ 9). Haider, unlike Taylor, does not process theses or dissertations because the School of Business does not have "thesis or dissertation requirements." (*Id.* at 16, ¶ 10). While at TSU, Haider "has never received a performance evaluation score . . . below a '3.'" (*Id.* at 16, ¶ 11).

Taylor challenges Haider's description of his job duties, alleging that he is not responsible for all the tasks he claims are part of his role. She alleges that Dr. Vanjani "prepares the Graduate School catalogs for all programs and the business school classes" and that "Dr. Vanjani and Mr. Haider split the duties regarding the four cohorts of the eMBA program and purchase books." (Docket Entry No. 26-6 at ¶¶ 31, 34). Taylor also notes that "the business graduate degree plans are already set in writing and [she is] the one who reviews for accuracy and final sign offs required." (*Id.* at ¶ 35).

**B.    Procedural Background**

This is the third suit that Taylor has brought against TSU. Taylor sued TSU in September 2013, asserting Title VII and Equal Pay Act violations. *Taylor v. TSU ("Taylor I")*, No. H-13-2708, 2014 WL 12586752, at *3 (S.D. Tex. Dec. 23, 2014). She alleged that she was paid less than three individuals with "Assistant Dean" in their titles, who were at other TSU graduate schools

or programs.  *Id.*  The court found on summary judgment that two out of three alleged comparators were not valid comparators because each had "job responsibilities [that were] quite different, broader, more varied and demanding than those assigned to [Taylor]."  *Id.*  The court allowed Taylor to proceed to trial with Shibu Mathews as the sole comparator, because Taylor had offered "some evidence" that she and Mathews had "comparable work responsibilities."  *Id.*  The jury found against Taylor after trial testimony revealed that Mathews, along with other Assistant Deans, had substantially different job responsibilities than Taylor, despite the similar title.  *Id.*  Final judgment was entered in favor of TSU in March 2015.  Final Judgment, *Taylor I*, No. H-13-2708, 2015 WL 5970163 (S.D. Tex. Mar. 26, 2015).

In 2018, Taylor sued TSU again, alleging that it discriminated and retaliated against her based on race and sex by passing her up for an Associate Dean position, failing to discuss her performance evaluations with her, and not increasing her salary.  *Taylor v. TSU ("Taylor II")*, No. H-17-1522, 2018 WL 7291459, at *5–6 (S.D. Tex. Dec. 26, 2018), adopted by 2019 WL 290215 (S.D. Tex. Jan. 23, 2019).  Taylor also alleged that Carol Mitchell, a college Budget Officer, and Cheymere Robinson, an Admissions Counselor, had received pay increases, while Taylor had not.  *Id.* at *6.  The court granted TSU's motion for summary judgment on all claims, finding that "Taylor has not raised a genuine issue of material fact on her discrimination or retaliation claims," and that TSU had legitimate and nondiscriminatory reasons for increasing Mitchell's and Robinson's salaries.  *Id.*

Taylor filed this third case after she found a copy of Haider's resume that listed his job title as the Assistant Dean for Graduate Programs, the same title Taylor had.  (Docket Entry No. 23 at ¶¶ 3.3–3.4; *see also* Docket Entry No. 23-1).  After finding the resume, Taylor made a gender-discrimination and pay-disparity complaint to TSU's Human Resources department in December

2018.  (Docket Entry No. 23 at ¶ 3.7; Docket Entry No. 25-1 at 5-6).  In the letter, Taylor stated that she had knowledge that "a male of foreign descent with no doctorate degree and fewer years of service at Texas Southern University [had] been publicly stating that he holds the title of Assistant Dean of Graduate 'Studies.'"  (Docket Entry No. 25-1 at 5).  In January 2019, the Human Resources department informed Taylor that Haider had been the Assistant Dean for Graduate Programs for the Jessie H. Jones School of Business since 2015, and that Haider earned $924.12 a year more than Taylor.  (Docket Entry No. 23-4).  TSU did not change Taylor's or Haider's salaries.  (Docket Entry No. 23 at ¶ 3.21).  Taylor sued in April 2019.  (Docket Entry No. 1).

Taylor asserts that TSU has violated the Equal Pay Act, 29 U.S.C. § 206(d), by paying a male employee with the same job title $924.12 more per year.  (Docket Entry No. 23-4).  TSU moved to dismiss; Taylor amended her complaint and responded to the motion.  (Docket Entry Nos. 12, 15, 16).  The court granted TSU's motion to dismiss Taylor's complaint, without prejudice and with leave to amend.  (Docket Entry No. 22 at 8).  Taylor filed an amended complaint, TSU moved for summary judgment, Taylor responded, and TSU replied.  (Docket Entry Nos. 23, 25, 26, 27).

In support of its motion, TSU submitted the following summary judgment evidence:

- Taylor's job description from 2007;

- Taylor's written complaint to Human Resources alleging gender discrimination;

- complaint file closure memorandum from Human Resources responding to Taylor's gender discrimination claims;

- Haider's draft job description from 2015;

- Dean of the Graduate School Gregory Maddox's declaration, including Taylor's performance evaluation scores; and

- Haider's declaration.

(Docket Entry No. 25-1).  In response, Taylor submitted:

- Haider's resume;

- Haider's job description from his earlier role as Program Manager for the School of Business;

- Haider's draft job description from 2015;

- complaint file closure memorandum from Human Resources responding to Taylor's gender discrimination claims; and

- Taylor's declaration.

(Docket Entry Nos. 26-2, 26-3, 26-4, 26-5, 26-6).

## II.    The Legal Standard

Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)).  "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 610 (5th Cir. 2018) (citations and internal quotation marks omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating'" that "there is an issue of material fact warranting trial."  *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th

Cir. 2015)).  The moving party must demonstrate the absence of a genuine issue of material fact, but it need not negate the elements of the nonmovant's case.  *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).  "If the moving party fails to meet [its] initial burden, [the summary judgment motion] must be denied, regardless of the nonmovant's response."  *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its . . . burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings."  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).  "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019).  In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor."  *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (brackets omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

## III.   Analysis

### A.   A *Prima Facie* Case of Discrimination under the Equal Pay Act

The Equal Pay Act "requires that an employer not discriminate 'between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'"  *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 993 (5th Cir. 2008) (quoting 29 U.S.C. § 206(d)(1)).  A plaintiff must make a *prima facie* showing of wage discrimination based on sex.  *Boudreaux v. Stranco*

*Field Servs., LLC*, No. CV 18-5569, 2019 WL 2142045, at *6 (E.D. La. May 16, 2019) (citing *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993)).  This showing requires a plaintiff to point to facts that could show that "(1) her employer is subject to the Equal Pay Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison."  *Id.*

TSU accepts that Taylor can satisfy the first and third *prima facie* elements, but disputes whether Taylor can show that she and Haider engage in work that is of "equal skill, effort, and responsibility." 29 U.S.C. § 206(d)(1)).  To do so, Taylor must allege facts showing that the "skill, effort, and responsibility" required for her job is "substantially equal" to what is required of a similarly situated coworker, Naveed Haider.  *Jones v. Flagship Int'l*, 793 F.2d 714, 723 (5th Cir. 1986); *see also Boudreaux*, 2019 WL 2142045, at *7.  "A common approach is to determine whether the jobs to be compared have a common core of tasks and then ascertain whether the differing or additional tasks make the work 'substantially different.'"  *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 849 (S.D. Tex. 2011).  Whether a plaintiff and a comparator engage in equal work often requires a factual determinization, making summary judgment rarely appropriate.  *Id.*

Taylor alleges that she and Haider engage in "equal work" because they "have essentially the same job functions."  (Docket Entry No. 23 at ¶ 3.13).  Taylor alleges that she and Haider both "oversee graduate programs and act as point of contact for graduate programs," as well as "perform academic advising tasks and policies and procedures for graduate students and the matriculation process."  (*Id.* at ¶ 3.11).  Taylor alleges that she performs almost all of the tasks listed in Haider's 2015 draft job description.  (*Id.* at ¶ 3.13; *see also* Docket Entry No. 23-3).

TSU argues that Taylor and Haider do not perform "equal work," preventing Taylor from establishing a *prima facie* Equal Pay Act claim.  (Docket Entry No. 25 at 9).  First, TSU correctly notes that while both Taylor and Haider have "Assistant Dean" in their titles, sharing a job title is not enough to show that two employees perform work of similar "skill, effort, and responsibility." (*Id.*); *see Montgomery v. Clayton Homes Inc.*, 65 F. App'x 508 (5th Cir. 2003); *E.E.O.C. v. Hernando Bank, Inc.*, 724 F.2d 1188, 1196 (5th Cir. 1984) ("The operative test is whether a woman is paid less for a job "substantially equal" to a man's; the test relates to job content rather than to job title or description.").  TSU compares the written job descriptions of Taylor and Haider and argues that these descriptions show "only some very high level general overlap – such as 'coordinating' or 'assisting.'"  (Docket Entry No. 25 at 10).

While comparing written job descriptions can be a meaningful way to evaluate whether employees perform equal work, the comparison is insufficient if the descriptions do not give details on what duties the employees actually perform.  *See Wojciechowski*, 763 F. Supp. 2d at 849 ("In making the "equal work" assessment, position titles or descriptions should be considered, but are not determinative without corroborating evidence of actual job content."); *E.E.O.C. v. TXI Operations, L.P.*, 394 F. Supp. 2d 868, 876 (N.D. Tex. 2005) (written job descriptions are typically not controlling; instead, courts should focus on comparing employees' "actual job performance" as evidence of substantially similar work).

Based on the present record, the court cannot find, as a matter of law, that the job descriptions do not show "equal work."  The descriptions are outdated, and Taylor claims to perform a substantial amount of the duties listed in Haider's job description.  (Docket Entry No. 25 at 10; Docket Entry No. 26-6 at ¶ 14).  These are disputed issues inappropriate for summary judgment resolution on the present record.

TSU argues that the declarations from Maddox and Taylor show that Taylor and Haider had jobs requiring different "skill, effort, and responsibility."  (Docket Entry No. 25 at 10; Docket Entry No. 25-1 at 11–16).  According to Maddox, Taylor's role is primarily "processing theses and dissertations, and checking to ensure students have met matriculation and graduation standards," while Haider is not involved with theses and dissertations.  (Docket Entry No. 25 at 10).  Maddox stated that Taylor is not required to travel, recruit students, register students for courses, review admissions decisions, or design course curriculum.  (Docket Entry No. 25-1 at 12, ¶ 6).  Haider stated that important aspects of his job include recruiting students, making admissions decisions, and traveling internationally and domestically.  (*Id.* at 15–16, ¶¶ 7–9).  Haider also described 11 duties that he performs that were not listed in his 2015 draft job description.  (*Id.* at 15, ¶ 6).  Based on a comparison of these declarations, TSU argues that summary judgment should be granted because Haider's additional job duties show that his job "requires considerably different skill and effort than Taylor," and because Dean Maddox confirmed that Taylor and Haider perform different duties.  (Docket Entry No. 25 at 10).

Taylor argues that she performs many of the duties that Haider claims to perform but that are not on his 2015 job description.  (Docket Entry No. 26 at 8).  Taylor argues that Maddox is not qualified to speak to her job duties, disputing his statements that she no longer performs certain duties that she says she still does, including purchasing and procurement.  (*Id.*).  Taylor also argues that TSU has failed to demonstrate a meaningful difference in Taylor's and Haider's roles because Taylor's declaration "provides this Court with evidence that, of the 11-part job duty section of his Declaration, Dr. Taylor performs wholly similar or very similar duties in an overwhelming majority of the functions."  (*Id.* at 9).  Taylor argues that she, like Haider, "meets with and advi[s]es students, assists recruiting students, works with accreditation information, selects student for

scholarships and internships, ensures degree programs are complied with, travels and represents Texas Southern University, and [is] part of the process for academic probation." (*Id.*).

TSU responds by arguing that Taylor's declaration is not competent summary judgment evidence because it includes matters beyond her personal knowledge. (Docket Entry No. 27 at 2–3). TSU argues that "Taylor's declaration may recite her beliefs about what incidental activities she . . . chooses to do in the course of her work (e.g., 'I travel and represent TSU'), but this is not competent evidence as to what are the assigned job duties of her position." (*Id.* at 2). According to TSU, Taylor's declaration is not competent evidence because many of the duties she claims to perform conflict with what Maddox, her supervisor who is responsible for assigning her job duties, stated that Taylor's job includes. (*Id.* at 2–3). TSU notes that Taylor qualifies four of her contentions as based on "to the best of [her] belief," demonstrating that the information is not in her personal knowledge. (*Id.* at 2). TSU cited *Jefferson v. Hospital Partners of America, Inc.*, in which the court granted summary judgment because the plaintiffs failed to make a *prima facie* showing of discrimination. No. CIV.A. H-08-1535, 2009 WL 8758090, at *21 (S.D. Tex. May 18, 2009), *aff'd sub nom. Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485 (5th Cir. 2010). But the court in *Jefferson* explained that the plaintiffs admitted that they had "no personal knowledge" as to the alleged comparators. *Id.* Here, Taylor alleges that she does have personal knowledge about Haider's job responsibilities and the division of responsibilities in the Business School. TSU asks the court to make a credibility determination, which is not permitted at the summary judgment stage.

TSU argues that even if the court accepts Taylor's declaration, it does not show that she and Haider perform substantially "equal work," because their functions do not require "equal skill, effort and responsibility." (Docket Entry No. 27 at 3–4). TSU provides several examples of these

discrepancies.  (*Id.*).  First, Taylor asserted that she travels for work like Haider because she once accompanied a TSU professor to China in 2018.  (*Id.* at 3; *see also* Docket Entry No. 26-6 at ¶ 25). TSU notes that this one-time trip is substantially different from Haider organizing and attending an annual international program for Executive MBA students in China.  (Docket Entry No. 27 at 3; *see also* Docket Entry No. 25-1 at 16, ¶ 8).  TSU also points to the differences between Taylor "advising students along the way" and Haider working individually with each student to advise and provide academic counseling each semester.  (Docket Entry No. 27 at 3; *see also* Docket Entry No. 26-6 at 4, ¶ 24).   Finally, TSU notes "a huge difference between Taylor incidentally 'communicat[ing] with potential applicants' and Haider 'being responsible for recruiting graduate students.'"  (Docket Entry No. 27 at 3; *see also* Docket Entry No. 25-1 at 15, ¶ 6; Docket Entry No. 26-6 at ¶ 28).  According to TSU, these differences are uncontested and support summary judgment in its favor.  (Docket Entry No. 27 at 3–4).

The summary judgment evidence demonstrates that Taylor and Haider perform some seemingly overlapping duties that are clearly not substantially equal in terms of "skill, effort, and responsibility," such as travel duties.  *See Sherrod v. Prairie View A & M Univ.*, No. CIV.A. H-10-1858, 2012 WL 75120, at *2–3 (S.D. Tex. Jan. 9, 2012) (for the purposes of an Equal Pay Act claim, a part-time dance teacher is not comparable to full-time faculty members because while they all teach, the faculty members are also responsible for other duties); *Parr v. Nicholls State Univ.*, No. CIV. A. 09-3576, 2011 WL 838903, at *5 (E.D. La. Mar. 3, 2011), *aff'd sub nom. Parr v. Hulbert*, 518 F. App'x 275 (5th Cir. 2013) (granting summary judgment when the plaintiff, an assistant dean at a university, could not show that she performed equal work to an associate dean, despite some overlaps in their administrative duties, because their work focused on different aspects of the school and some of the overlapping duties were beyond what was formally required

of the plaintiff).  But the record evidence also shows genuine factual disputes material to determining whether Taylor performs substantially similar duties to Haider.  These disputes preclude summary judgment on the basis of the current record.  *See Comer v. Jesco, Inc.*, No. CIV.A.1:96CV173-D-D, 1997 WL 671617, at *3 (N.D. Miss. Sept. 26, 1997) (without evidence of how essential a single differentiating task was to a comparator's job, the additional task was "insufficient to take their job functions outside the realm of being 'substantially equal' to that of the Plaintiff").  As in *Taylor I*, the present record does not permit the court to find that, as a matter of law, she and Haider performed different work justifying paying him almost $1,000 more a year. *See Taylor I*, 2014 WL 12586752, at *3 (denying summary judgment even though Taylor's "evidence about the scope of her responsibilities [was] largely her *ipse dixit*" declaration).

TSU's motion for summary judgment, on the ground that Taylor has failed to establish a *prima facie* case, is denied.

### B.      A Statutorily Permitted Explanation for the Wage Discrepancy

In an Equal Pay Act claim, if the plaintiff makes a *prima facie* showing, "the burden shifts to the defendant to demonstrate that differential pay was justified under '(i) a seniority system; (ii) a merit system; (iii) a system which measures earning by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'"  *See Boudreaux*, 2019 WL 2142045, at *8 (quoting 29 U.S.C. § 206(d)(1)).  If the defendant articulates a non-sex-based reason for the pay deferential, the plaintiff's Equal Pay Act claim fails unless the plaintiff can demonstrate that the articulated reason was pretextual.  *Browning v. Sw. Research Inst.*, 288 F. App'x 170, 174 (5th Cir. 2008).  To defeat a motion for summary judgment when an employer has articulated a statutorily permitted reason for a wage disparity, the plaintiff must "raise a genuine issue of fact as to whether the purported reasons were pretextual."  *Id.*

TSU argues that even if Taylor makes a *prima facie* showing, TSU has proffered a sex-neutral reason for the discrepancy between Taylor and Haider's wages. (Docket Entry No. 25 at 11). TSU states that Taylor's questionable work performance, as shown by her performance evaluation scores and student complaints, was "taken into consideration when deciding merit raises, and help[ed] to explain the pay differential." (*Id.*). In contrast, Haider has always received performance evaluation scores above a "3" and has been "entrusted with additional job duties and an expanded job title." (*Id.* at 11–12). Pointing to these differences in performance discharges TSU's burden of showing a reason "other than sex" for the pay discrepancy between Haider and Taylor. *See Tarango v. Johnson & Johnson Med., Inc.*, 949 F. Supp. 1285, 1291 (W.D. Tex. 1996) (evidence that a male comparator received better performance evaluations than the plaintiff was a statutorily permitted reason to explain the wage disparity).

The burden shifts to Taylor to point to some evidence supporting an inference that her work performance was a pretext for her lower wages and that the true reason for the pay disparity was her sex. *See Browning*, 288 F. App'x at 174 (affirming summary judgment when the defendant provided evidence of sex-neutral reasons for the wage disparity and the plaintiff provided only conclusory allegations of pretext). Pretext can be demonstrated "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1137 (5th Cir. 1983) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

In her response to TSU's motion, Taylor argues that TSU "never argued, or showed any facts that Defendant actually gave Mr. Haider more money to start his new position because Dr. Taylor had any performance issues, write ups or bad reviews." (Docket Entry No. 26 at 10).

Taylor notes that Haider received his promotion and raise in 2015, while she "has had no write ups, counseling, . . . or disciplinary actions since his hire in 2015." (*Id.* at 11). Taylor is correct that TSU has not submitted or identified summary judgment evidence showing how it determined Taylor or Haider's salaries. (*Id.*). Instead, Maddox's declaration states "only that alleged complaints and subpar scores 'would' be taken into consideration and 'would' affect pay." (*Id.*). TSU did not address Taylor's argument that it "failed to offer any evidence that anything merit related 'did' affect Dr. Taylor's salary." (Docket Entry No. 27).

Maddox's declaration that TSU may have considered work performance issues in determining Taylor and Haider's wages does not allow the court to find that as a matter of law TSU relied on Taylor's performance issues in setting her wages. *See Phillips v. TXU Corp.*, 194 F. App'x 221, 225 (5th Cir. 2006) (a statement from an employee who determined wages that sex-neutral factors like experience and education "could have" effected pay did not affirmatively prove that the employee did not rely on these factors).

On the current record, there are factual disputes material to determining whether Taylor's wages are lower than Haider's because of her performance issues. *See Thibodeaux-Woody v. Hous. Cmty. Coll.*, 593 F. App'x 280, 284 (5th Cir. 2014) (a sex-neutral reason for wage disparity can be applied in a discriminatory manner); *Hardy v. Caterpillar Glob. Mining Equip., LLC*, No. 4:14-CV-00492, 2016 WL 659150, at *9 (E.D. Tex. Feb. 18, 2016) (there was a factual dispute when the defendant alleged that a wage disparity was due to performance ratings and other sex-neutral factors but there was no evidence in support and noting that performance ratings could be "selectively applied in a discriminatory manner."). Taylor does not identify evidence showing that her sex influenced her wage. But the current record is insufficient to show that, as a matter of law,

TSU had sex-neutral reasons for the wage disparity.   TSU's motion for summary judgment is denied.

## IV.     Conclusion

Taylor hopes that this third lawsuit may be her winning claim.   It may be, or it may be her third strike.   That cannot be determined on the present record.   TSU's motion for summary judgment, (Docket Entry No. 25), is denied.   A status and scheduling conference will be held by Zoom on **July 7, 2020, at 10:00 a.m**. CDT.   Participant instructions will be separately circulated.

SIGNED on June 29, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge